AO 91 (Rev. 11/11) Criminal Complaint

Case 3:19-cr-00009-K   Document 1   Filed 12/07/18   Page 1 of 8   PageID 1

SEALED

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC - 7 2018

CLERK, U.S. DISTRICT COURT
By_____
        Deputy

# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

| | |
|---|---|
| United States of America <br> v. <br> JERRY LEE FARISH <br><br> Defendant(s) | ) ) ) ) ) ) ) ) <br> Case No. 3:18-MJ-812-BT |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  May 2016 through Aug. 2017  in the county of  Dallas  in the  Northern  District of  Texas , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1343 | Wire Fraud |

This criminal complaint is based on these facts:

See attached affidavit of Special Agent Jerry Lee Farish (FBI)

☐ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Tully Minoski, FBI
_____
Printed name and title

Sworn to before me and signed in my presence.

Date:  12/07/2018

_____
Judge's signature

City and state:  Dallas, Texas     Rebecca Rutherford, U.S. Magistrate Judge
_____
Printed name and title

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Tully Minoski, being duly sworn, hereby depose and state:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since July of 2012. I am currently assigned to a squad in Dallas, Texas, that is responsible for investigating complex financial crimes.

2. Since joining the FBI, I have participated in the investigations of individuals and organizations involved in various white-collar and violent crimes, to include violations of various forms of fraud (government, mail, wire, bank, investment, and corporate fraud), as well as money laundering, public corruption, civil rights (color of law, hate crimes, and human trafficking), kidnapping, and murder. I have also received specialized training and gained experience in arrest procedures, search warrant applications, the executions of search and seizures, and various other criminal laws and procedures.

3. I make this affidavit in support of the issuance of a complaint and arrest warrant for **Jerry Lee Farish** for a violation of 18 U.S.C § 1343, that is, Wire Fraud.

4. The statements contained in this affidavit are based upon my investigation, information provided by other law enforcement officers, and on my own experience and training as a Special Agent of the FBI. Because the affidavit is being submitted for the limited purpose of securing a complaint, I have not included each and every fact known to me concerning the investigation. I have set forth only the facts that I believe are necessary to establish probable cause that **Jerry Lee Farish** committed the crime of Wire Fraud, in violation of 18 U.S.C. § 1343.

## SUMMARY OF PROBABLE CAUSE

5. In or about September 2017, the FBI opened an investigation into **Jerry Lee Farish** concerning an allegation that he made false and material misrepresentations and promises to investors in order to induce them to invest money into what the investors' believed was the development of a residential property located at XXXX Little Bluestem in Westlake, Texas.

6. Based on information developed in the investigation, **Jerry Lee Farish** was the CEO of New Summit Homes, which was a real estate company that maintained its principal place of business in Bedford, Texas, within the Northern District of Texas.

7. In furtherance of the investigation, I interviewed three investors in the Little Bluestem property: Investor A, Investor B, and Investor C. In general, each investor was approached by **Jerry Lee Farish** about investing the development of a property at XXXX Little Bluestem. **Jerry Lee Farish** also promised each investor that the investor's funds would be used to develop and build a luxury residential home at XXXX Little Bluestem, a location in the high-end Vaquero neighborhood in Westlake, Texas. Each investor was told that his or her investment would be secured by a second lien on the property, subordinate only to a financial institution. **Jerry Lee Farish** also promised each investor that the investment would be used to build a house on the property, with the investment principal returned along with a sizeable profit to the investor.

8. **Jerry Lee Farish** did not tell each subsequent investor of others occupying a second lien position. Investor B was unaware that Investor A was already in a second lien position at the time Investor B made his or her investment. Likewise, Investor C was

unaware that Investor A and Investor B had already invested in the development of the Little Bluestem property at the time Investor C made his or her investment. Neither Investor B or Investor C would have invested in the development of the property had they known of the existence of the prior investors.

9. On or about December 19, 2017, I interviewed R.Z. ("Investor A"). R.Z. met **Jerry Lee Farish** through a common acquaintance. R.Z. invested in several different projects with **Farish** with general success. In or about May or June 2016, R.Z. was approached by **Farish** with the opportunity to invest in the development of XXXX Little Bluestem, which R.Z. did. R.Z. received a Deed of Trust and Promissory Note from **Farish**, but **Farish** never recorded the Deed of Trust as promised. Sometime in or around the summer of 2017, **Farish** admitted to R.Z. that **Farish** had spent R.Z.'s investment into the XXXX Little Bluestem property but refused to provide him any details.

10. On or about November 21, 2017, I interviewed J.W. and G.W., a married couple ("Investor B"). J.W. and G.W. met **Jerry Lee Farish** in or about November 2016. **Farish** took J.W. and G.W. to see several properties in the Dallas area. In or about January 2017, **Farish** solicited J.W. and G.W. to invest in the development of XXXX Little Bluestem, representing that it was a new project for New Summit Homes. Neither J.W. or G.W. were told that another investor had an unrecorded second lien position on the property. J.W. and G.W. believed they would have a second lien position on the property, that they would get back their investment when the property was built and sold, plus $50,000.

11. In or about January 2017, J.W. and G.W., through Company B, gave **Farish** a check in the amount of $200,000, which was deposited in Account No. x7549 at New Summit Homes as an investment into the development of XXXX Little Bluestem. On or about January 19, 2017, Company B received a Promissory Note and Deed of Trust from **Farish**. The documents reflect Company B's $200,000 investment with an expectation of $50,000 profit in return upon the closing and funding of the XXXX Little Bluestem property.

12. In or about May 2017, J.W. came to Dallas, Texas, and met with **Jerry Lee Farish**. J.W. asked to see the XXXX Little Bluestem property. **Farish** took J.W. to the property, and it was an undeveloped lot. **Farish** assured J.W. that J.W. would receive the return on the investment by October 2017. As of June 2017, **Farish** stopped communicating with J.W. Sometime later, J.W. and G.W. learned that another investor (R.A.) had invested before them and that a third investor (M.H.) had invested after them, each believing they held a second lien position and unaware of the other investors.

13. On or about January 29, 2018, I interviewed M.H. ("Investor C"). M.H. is a pilot with American Airlines. M.H. met **Jerry Lee Farish** through a common acquaintance. In or about June 2017, M.H. went on a tour of homes in Dallas with **Farish** and the next day went on a tour of homes in Westlake, Texas, including what was then an empty lot located at XXXX Little Bluestem. **Farish** showed M.H. picture of the home that New Summit Homes was going to build on the Little Bluestem lot. **Farish** told M.H. that S.G. owned the property but it was not uncommon for one investor to buy the property and for another to finance the construction.

14. On or about June 26, 2017, Investor C received an email from **Jerry Lee Farish** (using jerry@newsummithomes.com) regarding the investment. **Farish** explained that Investor C could "[i]nvest into a great property we have in Westlake (Vaquero Subdivision)." The email continued that the property "is valued at 2.7M once completed." The required investment was "350k and [the property] will be finish in roughly 1 year. It is already purchased and we will be breaking ground in the next week." **Farish** also addressed the lien: "Per our conversation today you will have a lien against the property to protect your interest." And finally, **Farish** stated that "[t]he return will be 65k (18.5% annual rate). Again, the anticipated total time will be 12 months from start to sold (hopefully sooner with pre-sale. You will be given a Deed of Thrust [sic] and a Promissory Note."

15. On or about June 27, 2017, Company A, an entity associated with M.H., sent an interstate wire of $525,000 into the New Summit Homes, Inc. bank account ending in 7659 at J.P. Morgan Chase Bank N.A., of which $350,000.00 was an investment into the development of XXXX Little Bluestem.

16. At the time M.H. made the investment into the development XXXX Little Bluestem, he was unaware of prior investments by Investor A and Investor B. M.H. was further unaware that both Investor A and Investor B had Deeds of Trusts reflecting a second lien position on the XXXX Little Bluestem property. M.H., at the time of his investment, believed he was the only investor on XXXX Little Bluestem. If M.H. had known that there were two other investors on the property, it would have been a red flag.

17. I have reviewed bank records for accounts associated with New Summit Homes, including Account No. x7659 at J.P. Morgan Chase Bank, where each of the above-described investments was deposited. These bank records indicate that M.H.'s interstate wire of $525,000 into the New Summit Homes, Inc. was sent via Fedwire. Based on my training and experience, all wire transfers for funds through Fedwire travel in interstate commerce. These records further indicate that there are three individuals with signatory control on the account, all of which are **Farish's** sons.

18. Based on my review of documents produced by the town of Westlake and by J.P. Morgan Chase Bank, the only discernable money applied to XXXX Little Bluestem was $210.00 paid for **Farish's** son to apply as a General Contractor. The rest of the investors' funds in x7659 were applied to personal and business expenses unrelated to the development of XXXX Little Bluestem. As of October 31, 2017, the ending balance in Account No. x7659 was $0.65, reflecting that nearly all of the investors' money (a cumulative total of $1,009,999.35) was spent.

19. On or about November 21, 2017, I conducted surveillance at XXXX Little Bluestem. The property was an undeveloped, empty lot containing a single real-estate agent sign in the name of Jill Farish, who I understand is **Jerry Lee Farish's** ex-wife.

## CONCLUSION

20. Based on the facts presented herein, I believe there is probable cause to believe that **Jerry Lee Farish** engaged in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, that is, to induce investors into investing in New Summit

Homes and the development of a residential property located at XXXX Little Bluestem in Westlake, Texas. On or about June 27, 2017, in furtherance of the scheme and artifice to defraud and to obtain money or property described herein, **Jerry Lee Farish** did knowingly and willfully cause M.H., through Company C, to send an interstate wire transfer of money, that is, $525,000, of which $350,000 was an investment into the XXXX Little Bluestem property, in violation of 18 U.S.C. § 1343.

Respectfully submitted,

_____
TULLY MINOSKI
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on December 7, 2018

_____
REBECCA RUTHERFORD
United States Magistrate Judge
Dallas, Texas

Affidavit in Support of Complaint—Page 7 of 7